**Roscoe JACKSON, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–281.

District of Columbia Court of Appeals.

Submitted Feb. 26, 1985.

Decided March 29, 1985.

Melvin M. Dildine, Washington, D.C., was on the brief for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Charles L. Hall, and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

On this appeal, Roscoe Jackson, Jr. seeks reversal of his convictions of two counts of armed robbery, D.C.Code §§ 22–2901, –3202 (1981), and two counts of assault with intent to commit robbery while armed, *id.* §§ 22–501, –3202.[1] Presented for our consideration is a single issue, *viz.*, whether the trial court properly sustained an assertion by three defense witnesses of the Fifth Amendment privilege against self-incrimination. Appellant submits that the court erred by failing to conduct a "particularized inquiry" as to the basis for the assertions of privilege. We do not agree and, accordingly, affirm.

The witnesses' Fifth Amendment claims were predicated upon a concern that their testimony would lead to further prosecution on charges related to the January 19, 1983 robbery of a Safeway food store in southeast Washington. On March 21, 1983, an indictment was filed by which appellant and each witness, codefendants Mark Collins, Thomas Clark, and Gerald Vines, were jointly charged with several crimes arising from the January 19 robbery. Prior to the commencement of appellant's trial, the three codefendants pled guilty to reduced charges and were sentenced.[2]

The government presented substantial evidence at appellant's trial implicating him as a participant in the Safeway robbery. Although no direct evidence was introduced linking him to the robbery itself, there was circumstantial evidence from which the jury could have concluded, and did conclude, that appellant was principally culpable as the operator of the getaway vehicle. On this basis, appellant's motion for a judgment of acquittal at the close of the government's case-in-chief was denied.[3] Of particular pertinence to this appeal are the events at trial which followed.

Appellant's theory of defense was that he unwittingly participated in the crime. To this end, trial counsel attempted to call as defense witnesses Collins, Clark, and Vines, whose testimony he anticipated would exculpate appellant. After Collins was called as the first witness, the prosecutor requested a bench conference during

1. Section 22–3202, which provides for an additional penalty when a defendant commits a crime while armed, has been amended and is now codified at D.C.Code § 22–3202 (Supp. 1984).

2. Pursuant to a plea bargain, Collins, Clark, and Vines each pled guilty to one count of armed robbery and one count of assault with intent to commit robbery. Along with appellant, they were originally charged with two counts of armed robbery, two counts of assault with intent to commit robbery while armed, and one count of carrying a pistol without a license, D.C.Code § 22–3204 (1981).

3. A judgment of acquittal was entered at this time on the pistol charge.

which he recounted Collins' earlier statement, made at his plea hearing, that he would invoke the Fifth Amendment if asked to testify at appellant's trial. Upon the court's inquiry, the prosecutor proffered that "if Mr. Collins were to say that he and the others forced ... [appellant] at gunpoint to drive them away from the area of the store, then he could be charg[ed] with kidnapping...." In response, counsel stated that although he expected Collins to testify that appellant had no knowledge of the robbery, he did not anticipate any incriminating testimony in the nature of an admission that appellant had been threatened.

After a brief recess, counsel for Gerald Vines appeared and apprised the court that Vines had been advised to invoke the privilege and that he believed Vines would do so. The court thereupon examined Vines who stated that all he wanted to do was "tell the truth." This was followed by further discourse between the court, appellant's counsel, and counsel for Vines.[4] The court concluded, however, that it would not resolve the issue until each potential witness had been counseled on the Fifth Amendment. Consequently, the court appointed separate counsel for Collins and Clark and then adjourned.

When the proceedings resumed, the court was informed that both Collins and Clark wished to testify. However, Collins' counsel explained that Collins had not been receptive to advice and had made the decision on his own. The court then examined Collins and expressed its desire that he speak with counsel before deciding whether to testify. Collins agreed. Clark was then brought before the court and posed with a similar line of questions. Clark confirmed

that he had been advised of his rights and that he wanted to testify.

When brought before the court for a second time, Collins reiterated his desire to testify. Appellant's counsel then inquired into the status of Gerald Vines. Upon the representations of counsel, Vines was still in the process of making his decision. Rather than permitting further delay, the court decided that it would resume the trial with Collins and Clark as defense witnesses.[5] Accordingly, the defense called Collins as its first witness and the following exchange took place:

THE COURT: ... What's the situation?

MR. COLLINS. We all decided we want to take the Fifth Amendment because we didn't want to jeopardize ourselves into further criminal activity. I received my punishment, I was satisfied with what I got....

THE COURT: All right. So you wish to exercise any Fifth Amendment right that you have, is that right?

MR. COLLINS: Yes.

THE COURT: All right. We're going to let the other lawyers talk to the other defendants and see where we stand.

Thereupon, the court questioned Clark and Vines and confirmed that they also intended to plead the Fifth Amendment.[6]

Arguments were heard from appellant's counsel at this point. In essence, he maintained that the witnesses had no basis upon which to assert their Fifth Amendment privilege, saying:

I'm just not aware of the factual basis, they having ... pled guilty to armed robbery and having been sentenced, for invoking a Fifth Amendment.... I made an opening in which I said the defense was that [the witnesses] ... hailed [appellant].... They knew him,

---

**4.** Apparently, Vines, Collins, and Clark were being held at this time in the same holding cell. Vines' counsel expressed his concern that Vines' decision reflected pressure from Collins and Clark.

**5.** The court reasoned that Vines could make his decision known after Collins and Clark testified.

**6.** The Fifth Amendment proceedings were conducted out of the presence of the jury. Before Collins was called as a witness, the jury was recalled. The trial judge excused the jury, however, to pose additional questions to Collins because he had seen him say something to a marshal as Collins entered the courtroom.

that they hailed him, that they got into the car and they drove away with him. I didn't say anything about coercion.

Counsel did concede, however, that the witnesses would be subject to extensive cross-examination by the government.

The court sustained the witnesses' invocation of the Fifth Amendment, hypothesizing that "[i]f one were to assume that [the witnesses] ... would say that they forced [appellant] ... to drive them away with the weapons that they had, then that would be a separate crime from any of the events in the indictment." The court thus concluded that it had gone as far as it could in inquiring into the witnesses' claims and that it was satisfied that they were entitled to assert the privilege.[7] Appellant now challenges this decision, or, more precisely, challenges the manner in which it was reached.

■■■ In *Davis v. United States*, 482 A.2d 783 (D.C.1984), this court recently explicated Fifth Amendment analysis for cases such as the case at bar. We observed:

> The due process clause of the Fifth Amendment requires that a defendant's right under the Sixth Amendment to have compulsory process for obtaining witnesses on his behalf be protected by the judiciary. *See Chambers v. Mississippi*, 410 U.S. 284 [93 S.Ct. 1038, 35 L.Ed.2d 297] (1973); *Washington v. Texas*, 388 U.S. 14, 19 [87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019] (1967); *Salim v. United States*, 480 A.2d 710 (D.C.1984). When a witness called by the defendant claims the privilege against self-incrimination, it is the duty of the trial judge—not the witness nor his counsel—to determine whether the witness can properly invoke the privilege. *Hoffman v. United States*, 341 U.S. 479, 486 [71 S.Ct. 814, 818, 95 L.Ed. 1118] (1951). While a witness' privilege extends beyond "answers that would in themselves support a conviction ... [to] those which would furnish a link in the chain of evidence need-

> ed to prosecute ... this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Id.* at 486 (citation omitted). Although it would be paradoxical and improper to require a witness to overtly prove the danger of self-incrimination, the trial court, after properly informing itself, must determine from the totality of the circumstances whether the witness has a reasonable cause to apprehend danger. *Mason v. United States*, 244 U.S. 362, 365 [37 S.Ct. 621, 622, 61 L.Ed. 1198] (1917); *Alston v. United States*, 383 A.2d 307, 312 (D.C.1978).

*Davis, supra*, 482 A.2d at 785. Since the trial court had not made the proper inquiry into the witnesses' claim, we remanded the case for further proceedings. *Id.*

■■ It is readily apparent that Collins, Clark, and Vines each had "reasonable cause to apprehend danger" from their testimony. If they had taken the stand and confirmed that appellant had in fact been an unwitting participant in the Safeway robbery, given the permissible scope of cross-examination, *Jaggers v. United States*, 482 A.2d 786, 794 (D.C.1984), their testimony might have furnished "a link in the chain of evidence needed to prosecute" additional charges. *See Davis, supra*, 482 A.2d at 785 (citing *Hoffman, supra*, 341 U.S. at 486, 71 S.Ct. at 818). This would hold true if appellant had been in any way abducted or coerced into driving away with the bandits.

To be sure, this danger may not have been apparent to the witnesses initially. And, although they eventually decided to assert the privilege, they may never have been fully cognizant of its implications. But once it was asserted, it was incumbent upon the trial judge to determine whether the witnesses could properly invoke the privilege. *Davis, supra*, 482 A.2d at 785. The trial judge made this determination on the basis of proffers by counsel and the

7. We note that once the witnesses' Fifth Amend-

ment claims were sustained, the defense rested.

prosecutor, and its own understanding of the facts peculiar to the case. The court reached the very plausible conclusion, by way of a hypothetical, that the witnesses' testimony could lead to further prosecution by the government. In short, given the totality of circumstances, *see id.*, the witnesses had reasonable cause to apprehend prosecution as a result of their compelled testimony. *See Jaggers, supra,* 482 A.2d at 793 (quoting *In re Corrugated Container Antitrust Litigation,* 213 U.S.App.D.C. 319, 327, 662 F.2d 875, 883 (1981)).[8]

The question remains whether the trial court failed to properly discern the bases for the witnesses' claimed Fifth Amendment privilege. As we have noted, as a general rule the trial court, "after properly informing itself, must determine from the totality of the circumstances whether the witness has a reasonable cause to apprehend danger." *Davis, supra,* 482 A.2d at 785 (citations omitted). And, as appellant suggests, this requires a more particularized inquiry where, as here, the witness is not the defendant. This court stated in *Davis, supra,*

> A witness may not assert a blanket privilege where a narrower assertion will suffice to protect his rights. *Vaughn v. United States,* 364 A.2d 1187, 1189 (D.C. 1976). To properly inform itself, when dealing with a witness who is not a defendant (or is no longer one), the trial court will generally have to permit an examination of the witness, out of the presence of the jury, and rule on the claim of privilege as asserted when each question is propounded. *Salim v. United States, supra,* 480 A.2d at 715; *Vaughn, supra,* 364 A.2d at 189; *United States v. Reese,* 183 U.S.App.D.C. 1, 7, 561 F.2d 894, 900 (1977).

*Davis, supra,* 482 A.2d at 785. Concededly, the trial court permitted the witnesses to assert blanket Fifth Amendment privileges.

■ We are not persuaded, however, that narrower privileges would have protected Collins, Clark, and Vines. In *Reese v. United States,* 467 A.2d 152, 157 (D.C. 1983), this court held that the trial court had not erred when it failed to require defense witnesses to invoke the Fifth Amendment on a question-by-question basis. This was so, we held, because "the trial court may bar a witness from testifying in the jury's presence if it properly concludes that the witness will refuse to answer essentially all the questions which he may be asked." *Id.* (citing *Alston v. United States, supra,* 383 A.2d at 313; *United States v. Reese, supra,* 183 U.S. App.D.C. at 6, 561 F.2d at 899; *Bowles v. United States,* 142 U.S.App.D.C. 26, 32, 439 F.2d 536, 542 (1970) (en banc), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971)). Here, given the limited scope of the witnesses' proffered testimony, and the breadth of permissible cross-examination, it was not error for the court to permit blanket assertions of the Fifth Amendment.

*Affirmed.*

---

**8.** In *Jaggers* we placed the burden on the trial court to determine, in the first instance, whether (1) the witness' testimony would be incriminatory, and (2) if so, "whether the risk of prosecution is substantial and real and not merely fanciful." *Id.* (quoting *In re Corrugated Container Antitrust Litigation, supra,* 213 U.S.App. D.C. at 327, 662 F.2d at 883). From our examination of the record in the case at bar, it is fair to say that the trial court considered the incriminatory nature of the proposed testimony and also the likelihood that criminal prosecution would result.