Charles S. LEE, Appellant,

v.

UNITED STATES, Appellee.

No. 88-219.

District of Columbia Court of Appeals.

Argued June 13, 1989.
Decided Aug. 18, 1989.

Bill D. Burlison, Washington, D.C., appointed by this court, for appellant.

Jock A. Banks, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and Elizabeth Trosman and Kevin J. Murphy, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, TERRY, Associate Judge, and PRYOR, Senior Judge.

TERRY, Associate Judge:

Appellant was convicted of possessing cocaine, a controlled substance, in violation of D.C.Code § 33-541(a)(1) (1988). The only issue on appeal concerns a remark made by the prosecutor in closing argument. Although we agree with appellant (and the trial court) that the remark was improper, we hold that it was not so prejudicial as to require reversal.

I

Metropolitan Police Officer Carl Gregory testified that one afternoon in November 1987, while on motorcycle patrol, he responded to a report of drug selling at an apartment building on Seventh Street, S.E. When Gregory arrived at the reported address, he saw appellant with a beer bottle in his right hand and realized at once that Lee matched the broadcast description of the drug dealer. Gregory got off his motorcycle and began to walk toward Lee. Fearful that Lee might use the beer bottle

as a weapon, Officer Gregory said to Lee as he came within a few feet of him, "Sir, you have to give me that." When Lee did not comply, Gregory reached for the beer bottle just as Lee put his left hand into the pocket of his coat. Thinking that Lee might be going for a weapon, Officer Gregory quickly grabbed Lee's left arm. As the two men struggled, Lee kept trying to pull something out of his pocket. After a few seconds Gregory saw a plastic bag and four small vials containing white powder fall out of Lee's left coat pocket and hit the ground.

Moments earlier Officer John Turman had arrived on the scene to assist Officer Gregory. When Gregory spotted Turman coming up the sidewalk, he yelled out, "Turman, he's trying to get rid of some drugs." Hearing this, Officer Turman ran up to where the two men were struggling and helped Gregory subdue and handcuff Lee, while Lee tried unsuccessfully to push the fallen vials away with his feet. Officer Turman recovered two of the vials from under Lee's right foot and the other two from a spot directly beneath where Lee stood. Turman then went to the other side of a nearby fence to search for other vials that might have been kicked under the fence, but he found none. A field test of the white powder in the vials showed it to be cocaine. Subsequent laboratory analysis confirmed that it was cocaine and established that it was a usable amount. The plastic bag, which was empty, was not seized.

Besides Lee, who testified in his own behalf, two other witnesses were called by the defense. Sheldon McDowell said that he was in the courtyard in front of the apartment building, talking with some friends, when he heard a siren and saw a police officer on a motorcycle driving up the sidewalk. The officer then got off the motorcycle and spoke to every person in the courtyard. According to McDowell, the officer walked up to Lee, who was coming out of the building drinking a beer, grabbed him, and threw him up against a nearby fence. A second officer arrived on the scene in a squad car, walked over to where Lee was being detained, hit him on

the head with a nightstick, and tried to throw Lee, who by this time was handcuffed, over the fence. It was McDowell's testimony that no vials fell from Lee's person, but that the second officer found the vials in the grass on the other side of the fence, about two feet from where Lee stood. Michael Jaspar, who was also in the courtyard, gave essentially the same testimony as McDowell, except that he recalled the two officers arriving together, and he did not recall hearing a siren.

Lee testified that it was payday and that he usually had a drink after work on payday. He said that he had just come out of the building with a bottle of beer when Officer Gregory walked up to him and told him to drop the bottle, which he did. The next thing he knew, Gregory pushed him against the fence, searched him, and handcuffed him. Lee denied possessing any drugs or vials. Instead, he testified that when a second officer found some drugs on the other side of the fence, both officers tried to boost him over the fence so that he would be nearer the drugs. The officers' plan was thwarted when his jacket got caught on the fence. During his testimony Lee was impeached with prior convictions of second-degree burglary, second-degree murder, and attempted armed robbery, and the court gave the jury a cautionary instruction that the prior convictions were to be used solely in determining Lee's credibility, and for no other purpose.

In commenting on Lee's credibility as a witness during closing argument, the prosecutor said:

> I also ask you to consider the credibility of Mr. Lee on the stand. He testified he never had those drugs. He said he never pulled the drugs out of his pocket. Ladies and gentlemen, everybody makes mistakes, you've heard them. *But I submit to you that Mr. Lee is a more likely person to not tell the truth if he's the kind of person that would steal from somebody else.* Not saying—. [Emphasis added.]

At this point defense counsel interrupted with an objection, asking that the italicized portion of the prosecutor's comment be

stricken from the record and that the jury be instructed to ignore it.[1] The court, concerned about the reference to "the kind of person," sustained the objection and gave an immediate curative instruction to the jury.[2] Defense counsel then moved for a mistrial, which the court denied.

The denial of that motion for mistrial is Lee's sole claim of error on appeal. Although we agree with the trial court that the prosecutor should not have said what he said, we hold that the court did not abuse its discretion in denying the motion for mistrial when confronted with the prosecutor's errant remark.

## II

■■■ The decision to grant or deny a motion for mistrial is committed to the trial court's broad discretion. *Hallman v. United States*, 410 A.2d 215, 217 (D.C. 1979); *Middleton v. United States*, 401 A.2d 109, 127 (D.C.1979); *Rink v. United States*, 388 A.2d 52, 58 (D.C.1978). This court will not overturn the trial court's decision unless it appears unreasonable, irrational, or unfair, *see Johnson v. United States*, 398 A.2d 354, 362–364 (D.C.1979), or unless the situation is so extreme that failure to reverse would result in a miscarriage of justice. *Beale v. United States*, 465 A.2d 796, 799 (D.C.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984). When the request for a mistrial is based on alleged prosecutorial misconduct in a criminal case, we must assess the gravity of the misconduct, the relative strength of the government's case, the centrality of the issue affected, and any mitigating actions taken by the court, all the while giving due deference to the decision of the trial judge, who had the advantage

of being present not only when the alleged misconduct occurred, but throughout the trial. *Parks v. United States*, 451 A.2d 591, 611–612 (D.C.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983); *Jenkins v. United States*, 374 A.2d 581, 585 (D.C.), *cert. denied*, 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977); *see Johnson v. United States, supra*, 398 A.2d at 362–363; *see also Gaither v. United States*, 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969).

■■■ "The risk of jury misuse of previous conviction impeachment is at its greatest when ... the crime charged and the crime used to impeach the defendant are similar." *Ford v. United States*, 487 A.2d 580, 591 (D.C.1984) (citations omitted). That did not happen in this case; Lee was on trial for possession of cocaine, but the impeaching convictions were for unrelated offenses. Moreover, the prosecutor's comment was made during a general discussion of Lee's credibility. It did not come close to suggesting that Lee had a propensity to commit the crime charged, which would make this a very different case. *See Williams v. United States*, 549 A.2d 328, 333–334 (D.C. 1988); *Fields v. United States*, 396 A.2d 522, 527 (D.C.1978) (reversible error for prosecutor, in a trial for gun-related offenses, to imply that defendant "was the type of man who usually carried a gun"); *United States v. Henry*, 174 U.S.App.D.C. 88, 93–95, 528 F.2d 661, 666–668 (1976). We are not persuaded that the offending remark by the prosecutor prompted the jury "naturally and necessarily" to conclude that Lee was guilty of the crime charged. *Dorman v. United States*, 491 A.2d 455, 460 & n. 5 (D.C.1984) (en banc).

1. On appeal Lee correctly points out that, strictly speaking, none of his prior convictions involved "stealing from somebody else."

2. Before allowing the prosecutor to resume his argument, the court told the jury:

Ladies and gentlemen, as to the statement that you may consider whether the fact that Mr. Lee has been previously convicted of a criminal offense or offenses renders him the type of person who is not likely to tell the truth during the course of his testimony, the

type of person, that statement, you are instructed to disregard it and give it no consideration in this matter. As I previously instructed you, evidence of previous criminal convictions ·is admitted for the purpose of permitting you to use it, use that evidence in evaluating the witness' testimony as a witness, along with all the other evidence in the case. You may use it for that purpose, but for no other purpose during the course of your deliberations in this matter.

We also note that the government's evidence here was stronger than in the usual case: two police officers, rather than just one, testified to Lee's possession of four vials of white powder which he tried unsuccessfully to discard.[3] Other evidence showed that the white powder was cocaine. Although the trial was essentially a credibility contest between the two officers and the three defense witnesses, Lee's version of events was supported by that of two other persons, McDowell and Jaspar, whose testimony was not impeached in any way. If the jury believed those two witnesses, it could have acquitted Lee without even considering Lee's testimony. This is not a case in which the defendant was the only defense witness, thereby making his credibility of the utmost importance. *Compare Franklin v. United States*, 555 A.2d 1010, 1013 (D.C.1989) (improper impeachment was not harmless because the defendant "was his own sole witness, and his account of what happened was his only shield against a conviction").

Finally, the trial court made considerable efforts to mitigate the prejudice resulting from the prosecutor's comment. As requested by defense counsel, the court struck the offending remark from the record and instructed the jury to disregard it.[4] Then, in its final charge, the court instructed the jury that the arguments of counsel were not evidence, reminded the jury that it must disregard statements that were stricken from the record, and reiterated that no inference of guilt of the crime charged could be drawn from Lee's prior convictions. Viewing the record as a whole, we find no substantial prejudice and no basis for reversal. *See Parks v. United States, supra,* 451 A.2d at 613–615; *Harris v. United States,* 430 A.2d 536, 540–541 (D.C.1981); *Carpenter v. United States,* 430 A.2d 496, 506–507 (D.C.1981) (en banc); *Bates v. United States,* 403 A.2d 1159, 1163 (D.C.1979); *Jenkins v. United States, supra,* 374 A.2d at 584–585; *Hyman v. United States,* 342 A.2d 43, 45 (D.C.1975); *Maxwell v. United States,* 297 A.2d 771,

772–773 (D.C.1972), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2740, 37 L.Ed.2d 147 (1973). *Compare Mathis v. United States,* 513 A.2d 1344, 1348–1349 (D.C.1986) (no curative instruction given; conviction reversed); *Dyson v. United States,* 418 A.2d 127, 130–132 (D.C.1980) (conviction reversed when government's case consisted entirely of circumstantial evidence, and prosecutor made repeated remarks about the veracity of the defense witnesses). We remind the government, however, that comments such as the one challenged here, which can be easily avoided, have no place in a prosecutor's argument to the jury.

*Affirmed.*

---

**3.** Officer Gregory actually saw the vials fall from Lee's pocket, and Officer Turman recovered them from the ground at Lee's feet.

**4.** See note 2, *supra.*