John IRBY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 84–306, 86–738 and 88–1055.

District of Columbia Court of Appeals.

Submitted Nov. 13, 1990.
Decided Jan. 17, 1991.

W. Gary Kohlman, Washington, D.C., appointed by this court, was on brief, for appellant.

Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty. at the time brief was filed, and Joan C. Barton, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before ROGERS, Chief Judge, and NEWMAN and FERREN, Associate Judges.

ROGERS, Chief Judge:

Appellant John D. Irby was convicted by a jury of carrying a pistol without a license, D.C.Code § 22–3204 (1989), possession of an unregistered firearm, *id.* § 6–2311(a), and unlawful possession of ammunition, *id.* § 6–2361(3). In these consolidated appeals he contends principally that the trial judge erred in (1) permitting a witness to assert a blanket Fifth Amendment privilege, and (2) refusing to admit an affidavit from an absent codefendant as a declaration against interest. He also contends his convictions must be reversed because of prosecutorial misconduct, that he is entitled to a new trial based upon the discovery of new evidence, and that his sentence is unlawful because of merger of offenses and improper enhancement. We agree only with appellant's first contention that the trial judge erred in permitting the witness to invoke a blanket Fifth Amendment privilege without determining whether the Maryland and the District of Columbia authorities intended to prosecute. Accordingly, we remand for further proceedings with respect to the Fifth Amendment privilege; otherwise we affirm.

I.

While on routine patrol at approximately 8:15 p.m. on November 18, 1982, Officer Young and Sergeant Thomas saw several individuals engaging in activity around a Cadillac. One man, later identified as Lawrence Hopkins, placed a large box on the passenger seat of the car. A second man, James Gaston, was sitting in the driver's seat and appellant was standing beside the car.

As the officers approached the Cadillac, Officer Young noticed that Hopkins saw the officers and said something to appellant. Appellant then removed from his waistband a shoulder holster containing a handgun and placed it under the car. Officer Young drew his service revolver, told appellant to step away from the car, and retrieved the holster, which contained a .357 magnum.

As Officer Young approached Hopkins to question him, appellant began to run. Sergeant Thomas apprehended appellant. When Gaston, who was still behind the wheel of the car, tried to drive away, Young pulled out the .357 magnum and told Gaston to turn off the ignition. Gaston complied, but attempted to flee on foot. Officer Young noticed that Gaston was trying to reach into his coat. After subduing Gaston, Young recovered a .38 caliber revolver from Gaston's coat.

At a preliminary proceeding before trial, appellant's counsel informed the trial judge that he intended to call Hopkins as an exculpatory witness. Counsel for appellant proffered that Hopkins would testify that he was at the scene and, contrary to the police account, he did not see appellant with a gun or place a gun under the car. Further, according to appellant's proffer, Hopkins would testify that appellant was not beside the car, as the police said, but eight feet away.

At this proceeding Hopkins' attorney advised the judge that if called to testify, Hopkins would assert a blanket Fifth Amendment privilege not to testify. Hop-

kins apparently had been loading space heaters into the car at the time the police officers approached, and a subsequent investigation revealed the heaters had been stolen from a lumberyard in Maryland. The Maryland authorities filed charges against Hopkins which were later *nolled.* Hopkins' attorney represented that the Maryland authorities could reinstate the charges at any time and by testifying Hopkins would make reindictment more likely as he would be subject to cross-examination regarding what he was doing at the scene.

It was revealed later at this proceeding that appellant was in possession of an affidavit from the codefendant Gaston, who claimed that Hopkins had sold Gaston the gun later recovered from Gaston's coat. After this discovery, Hopkins' attorney asserted that Hopkins had a second basis to claim a Fifth Amendment privilege namely that by testifying Hopkins would risk being charged in the District of Columbia with constructive possession of a second gun.

The trial judge accepted Hopkins' blanket assertion of the Fifth Amendment privilege. In making this determination the judge did not have information whether the Maryland authorities had any intention of reinitiating prosecution of the stolen property charge.[1] Nor did the trial judge ascertain the local prosecutor's intentions with respect to the second gun charge, or seek a commitment from the prosecutor not to prosecute.

## II.

Appellant contends that the trial judge erred in sustaining Hopkins' blanket refus-al to testify on the basis of the Fifth Amendment privilege against self-incrimination without first conducting a sufficient inquiry to determine whether Hopkins was entitled to invoke a blanket privilege. Appellant contends first, that the questions that would have been propounded sought answers that would not have incriminated Hopkins, and second, that Hopkins faced no real possibility of being prosecuted in the District of Columbia for a firearms offense or by the State of Maryland for receiving stolen property.

In considering a claim of privilege under the Fifth Amendment by a witness, the trial judge must engage in a two-prong inquiry to determine whether the potential testimony would tend to incriminate the witness and whether the risk of prosecution is "substantial and real." *Jaggers v. United States,* 482 A.2d 786, 793 (D.C. 1984) (quoting *In re Corrugated Container Antitrust Litig.,* 213 U.S.App.D.C. 319, 327, 662 F.2d 875, 883 (1981)). Ordinarily the trial judge must examine the witness outside of the presence of the jury, and rule on the claim of privilege one question at a time, to determine if the answers would tend to incriminate the witness. *Davis v. United States,* 482 A.2d 783, 785 (D.C.1984); *see also Salim v. United States,* 480 A.2d 710, 715 (D.C.1984). However, where it is evident that anything less than a blanket privilege will not protect the witness, then the witness need not invoke the privilege question by question. *Jackson v. United States,* 490 A.2d 192, 195 (D.C.1985).[2]

---

**1.** The trial judge initially expressed interest in contacting the Maryland authorities to ascertain their position when he asked Hopkins' attorney "[i]s there any way this can be resolved by finding out what the State of Maryland is going to do?" The judge apparently accepted Hopkins' attorney's representation that "I don't think a statement in good faith from the prosecutor, saying we have no present interest, would be enough," and did not pursue the matter.

**2.** *See, e.g., Wilson v. United States,* 558 A.2d 1135, 1142 (D.C.1989) (question-by-question inquiry not required where every potential question would prove that witness, and not defen-

dant, committed crime); *Holbert v. United States,* 513 A.2d 825, 828 (D.C.1986) (defense witness who was arrested during the defendant's trial for robbery based on the same incident could properly invoke blanket privilege where he would have been subject to cross-examination concerning his participation in robbery to establish his motive to lie); *Reese v. United States,* 467 A.2d 152, 157 (D.C.1983) (blanket privilege upheld where the government would be entitled to ask questions on cross-examination regarding bias and general credibility which would necessarily delve into witness' role in a related homicide).

## A.

Appellant contends first, that the questions that defense counsel would have asked Hopkins would merely have established that Hopkins was on the scene when appellant was arrested, a fact already established by the police officers' testimony, and would only have concerned Hopkins' observations of appellant, such as where appellant was standing, whether Hopkins had noticed a weapon on appellant, and whether he had observed appellant throw anything. Consequently, appellant maintains, Hopkins' testimony would not have been self-incriminatory. However, the scope of the potential defense questions is not as innocuous as appellant would suggest. *See In re J.W.Y*, 363 A.2d 674, 685 n. 14 (D.C.1976).

By admitting that he was on the scene, Hopkins would be admitting that he was on the scene with the stolen space heaters and would be subject to cross-examination regarding what he was doing at the time. *See Letsinger v. United States*, 402 A.2d 411, 416 (D.C.1979). His response that he was loading boxes into the car would have implicated him in the crime of receiving stolen property, and he might well have incriminated himself on a firearms charge as well. Gaston had given defense counsel a statement in which Gaston claimed that Hopkins was the source of both the gun for which appellant was arrested and the gun recovered from Gaston's coat. Had Hopkins testified about appellant's possession or non-possession of a gun, Hopkins would have opened himself up to cross-examination regarding his own involvement with the guns. *See United States v. Hubbard*, 429 A.2d 1334, 1338 (D.C.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981). Given the scope of proper cross-examination, the potential for self-incrimination was clear and the trial judge was not required to conduct a question-by-question inquiry. Moreover, Hopkins' attorney represented that had Hopkins been questioned he would simply make a record, by taking the Fifth. *See Holbert, supra*, 513 A.2d at 828; *Jackson v. United States*, 490 A.2d 192, 195 (D.C.1985). We, therefore, find no error with the sufficiency of the trial judge's inquiry with respect to whether Hopkins' proffered testimony was incriminatory.

## B.

Appellant contends second, and we agree, that the trial judge failed adequately to address the second prong of the test for privilege.

The Fifth Amendment privilege only extends to real dangers and not to remote possibilities where the threat of prosecution is not "real or appreciable." *Wilson, supra*, 558 A.2d at 1141 (citing *In re Neal*, 475 A.2d 390, 392 (D.C.1984) (per curiam)); *see Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *Davis, supra*, 482 A.2d at 785. Thus, the trial judge must determine whether the witness has reasonable cause to apprehend danger from a direct answer. *Hoffman, supra*, 341 U.S. at 486, 71 S.Ct. at 818; *Davis, supra*, 482 A.2d at 785. To determine whether the threat of prosecution is real, the trial judge must also consider the possible alternatives which may resolve the conflict between the witness' Fifth Amendment privilege against self-incrimination and the defendant's Sixth Amendment right to compulsory process for obtaining witnesses. *Davis, supra*, 482 A.2d at 785; *Jaggers, supra*, 482 A.2d at 797 (Newman, J., concurring opinion). The court has, therefore, required that the trial judge inquire whether the appropriate prosecuting authority intends to bring charges against the witness, or seek an agreement by the prosecutor not to bring charges. *Davis, supra*, 482 A.2d at 785; *see Wilson v. United States, supra*, 558 A.2d at 1141.[3] If the prosecuting authority refuses to make a commitment not to prosecute, then the trial judge must

---

**3.** In *Jackson, supra*, 490 A.2d at 194, while we did not address whether the trial judge had sought a commitment not to prosecute, it is clear that the trial judge had satisfied the *Davis* inquiry. In response to the trial judge's inquiry, the prosecutor represented that if one of the witnesses gave inculpatory testimony, the witness could be charged with kidnapping.

make an independent assessment, based on all of the circumstances, of the likelihood of prosecution. *See Jaggers, supra,* 482 A.2d at 793, 794 n. 6; *Davis, supra,* 482 A.2d at 785.

The trial judge made no such determination here. While prosecution on the gun and stolen property charges may have been possible,[4] it is the responsibility of the trial judge in the first instance to assess the probability of prosecution by conducting the inquiry required by *Davis, supra,* 482 A.2d at 785. With respect to the stolen property charge, the trial judge did not contact the Maryland authorities, ascertain their position, and request a commitment from them not to prosecute. *See id.* Nor did the trial judge request such a commitment from prosecuting authorities with respect to the gun charges. The prosecutor did offer his view that Hopkins was unlikely to incriminate himself with respect to the gun, but the record does not reflect that the trial judge sought a commitment from the prosecutor not to initiate charges if Hopkins did incriminate himself. In the absence of such inquiry and request by the trial judge, and the lack of evidence as to whether the prosecuting authorities may decide or refuse to make such a commitment, the trial judge cannot make a reasoned determination of the likelihood of prosecution. The record indicates also that the trial judge made no effort to consider the alternatives which might have resolved the conflict between the witness' Fifth Amendment privilege against self-incrimination and the defendant's Sixth Amendment right to compulsory process for obtaining witnesses.

■ Accordingly, we must remand the case to the trial court for further proceedings. If upon remand the trial judge determines, after proper proceedings, *id.* at 786, that Hopkins could properly decline to testify, then, since appellant's other claims of error are meritless, *see infra,* the judgment shall be deemed affirmed. If, on the other hand, the judge determines that the witness' rights would be protected without a blanket privilege, then the trial judge must determine whether the omission of Hopkins' testimony was harmless beyond a reasonable doubt. *Id.* If harmless, then the trial judge's task is complete; if it was not harmless, then the trial judge should vacate the conviction and order a new trial. *Id.*

### III.

■ Appellant also contends that the trial judge erred in excluding from the jury's consideration exculpatory evidence by his codefendant, James Gaston, that appellant was not involved in possession of the gun. We disagree.

### A.

At trial, appellant sought to introduce as a declaration against interest a sworn affidavit by Gaston exculpating appellant and inculpating himself.[5] The trial judge's ruling appears to have rested on a determination that Gaston was available to testify and the affidavit was unreliable and un-

---

4. Hopkins' fear of prosecution may not have been imaginary. If Hopkins' testimony placed him near the space heaters helping, assisting, and putting the space heaters into the car, he would provide a link in the chain that could well make it attractive for Maryland to reinstitute criminal prosecution for the space heaters. *State v. Boozer,* 304 Md. 98, 101, 497 A.2d 1129, 1130 (1985) (state may retry *nolled* case if jeopardy has not attached); *see Alston v. United States,* 383 A.2d 307, 312 (D.C.1978) (risk of prosecution for possessing an unregistered firearm and ammunition is real even though the Corporation Counsel does not often prosecute under similar circumstances, because "it would not have been unreasonable or impermissible

for it to have done so here"). Further, Hopkins' testimony could have resulted in prosecution on gun charges. Gaston's statement already implicated Hopkins in the gun transaction, and the prosecutor did not represent to the trial judge that Hopkins would not be charged in the District of Columbia concerning the guns.

5. In the affidavit, Gaston states that "at no time did Mr. John Irby have any kind of possession over any of the guns or heaters. When the arresting officers came on the scene, Mr. John D. Irby was about five to ten feet away from the blue cadillac and talking to three other fellows. As I was buying the guns and heaters, Mr. Irby was still talking to these three (3) fellows."

trustworthy.[6]

 In *Laumer v. United States,*
409 A.2d 190, 199 (D.C.1979), the court
adopted the three-part test under FED.R.
EVID. 804(b)(3) to determine the admissibili-
ty of evidence under the declaration
against interest exception to the hearsay
rule. The trial judge must "ascertain (1)
whether the declarant, in fact, made a
statement; (2) whether the declarant is un-
available; and (3) whether corroborating
circumstances clearly indicate the trustwor-
thiness of the statement." *Laumer, su-
pra,* 409 A.2d at 199. The judge's findings
will not be disturbed unless they are clear-
ly erroneous. *Id.* at 203. Furthermore,
the proponent of the evidence has the bur-
den of establishing unavailability. *See id.*
at 199 (citing *Coppedge v. United States,*
114 U.S.App.D.C. 79, 83, 311 F.2d 128, 132
(1962), *cert. denied,* 373 U.S. 946, 83 S.Ct.
1541, 10 L.Ed.2d 701 (1963)).[7] The trial
judge could properly find that appellant
failed to meet his burden to show Gaston's
unavailability.

Appellant's investigator knew that Ga-
ston would not voluntarily appear at trial,
but the record does not reflect that appel-
lant made any effort to subpoena Gaston
or to procure his attendance by other
means. Nor was there evidence that appel-
lant did not know where Gaston could be
found, or that Gaston had fled the jurisdic-
tion and was beyond the subpoena power
of the court. That appellant's counsel ob-
tained Gaston's affidavit suggests suffi-
cient ability to locate Gaston.

6. The trial judge did not explicitly state that the
affidavit was untrustworthy but only that "it
leaves much to be desired." The trial judge did
not refer to unavailability as his rationale for
denying the motion.

7. Under FED.R.EVID. 804(a)(2) if an accused es-
tablishes that the declarant erroneously persists
in refusing to testify, he may meet the unavaila-
bility requirement. *Accord Laumer, supra,* 409
A.2d at 200. Under FED.R.EVID. 804(a)(5), a de-
clarant is unavailable if he "is absent from the
hearing and the proponent of his statement has
been unable to procure his attendance ... by
process or other reasonable means." While re-
sort to process is not required where a search
warrant is issued and where authorities are un-
able to find the declarant, *United States v. Lo-*

Further, Gaston's statement did not have
the usual indicia of trustworthiness. Ga-
ston executed the affidavit before a notary
public three months after the events de-
scribed transpired. Consequently, his
statement was neither spontaneous, nor
made immediately after the incident, nor
made to a relative or person with whom he
had a relationship indicating trust. *Id.* at
200–01.[8] Nor was Gaston's statement sig-
nificantly against his penal interest since
he was already facing three weapons-relat-
ed charges with respect to the gun recov-
ered on his person. His affidavit implicat-
ed him with respect to the other gun and
while this would possibly increase the
length of incarceration, "[a]s a practical
matter ... [it would] not expos[e] him to
significantly greater liability by saying that
both pistols, as distinguished from only
one, were his." *Henson v. United States,*
399 A.2d 16, 20 (D.C.), *cert. denied,* 444
U.S. 848, 100 S.Ct. 96, 62 L.Ed.2d 62 (1979);
*see Laumer, supra,* 409 A.2d at 202. Ac-
cordingly, we find no error by the trial
judge.

## B.

██ More than a year after being sen-
tenced, appellant filed a motion for a new
trial based upon Gaston's new-found will-
ingness to testify. Gaston testified at the
hearing on the motion that appellant had
no connection with the guns that were
seized because Gaston, himself, owned
them. This was essentially the same ac-
count that he had related earlier in his

*pez,* 777 F.2d 543, 554 (10th Cir.1985), the pro-
ponent must make some showing that he or she
attempted to locate the declarant and to procure
the declarant's attendance at trial. *See Draiman
v. United States,* 784 F.2d 248, 258 (7th Cir.
1986).

8. *See also Brown v. United States,* 542 A.2d 1231,
1235 (D.C.1988) (excluding statement to defense
attorney made three months after events); *Unit-
ed States v. Ospina,* 739 F.2d 448, 452 (9th Cir.
1984) (excluding statements made after arrest),
*cert. denied,* 471 U.S. 1126, 105 S.Ct. 2658, 86
L.Ed.2d 274 (1985); *United States v. Guillette,*
547 F.2d 743, 754 (2d Cir.1976) (excluding state-
ment made to police officer four months after
events), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132,
54 L.Ed.2d 102 (1977).

affidavit. The trial judge denied the motion on the ground that appellant had failed to satisfy any of the five conditions that must be met in order to grant a new trial, specifically noting that Gaston's testimony was not "newly discovered" evidence and was cumulative. *Heard v. United States,* 245 A.2d 125, 126 (D.C.1968); *see United States v. Diggs,* 649 F.2d 731, 740 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981).[9] We find no abuse of discretion by the trial judge. *Smith v. United States,* 466 A.2d 429, 432 (D.C. 1983).

Gaston's testimony differed in significant respects from his affidavit and from his statements in court when he pled guilty before another judge. Further, in view of another witness' trial testimony that appellant was at the scene and had not been seen with a gun or anything in his waistband, Gaston's testimony was largely cumulative. Furthermore, Gaston's ownership of the gun was not a material issue because appellant was charged with possession, not ownership of the gun. The trial judge could properly conclude that Gaston's testimony, given its infirmities, would have had no impact on the outcome of trial.[10] *Johnson v. United States,* 537

9. *See also United States v. Vergara,* 714 F.2d 21, 23 (5th Cir.1983); *United States v. Metz,* 652 F.2d 478, 480 (5th Cir.1981).

10. Appellant's reliance on a jury note indicating that the jury was deadlocked can be of little assistance to appellant; once the jury was given the *Winters* charge, *Winters v. United States,* 317 A.2d 530 (D.C.1974) (en banc), the jury did not take long to return its guilty verdict, and speculation about the jury's deliberations is not a basis for upsetting a conviction.

11. Appellant's contention that the trial judge erred in denying a mistrial based upon three references by the prosecutor to the gun recovered from Gaston is meritless since any errors would have been harmless. *Mathis v. United States,* 513 A.2d 1344, 1348 (D.C.1986); *Dyson v. United States,* 450 A.2d 432, 437 (D.C.1982); *Obregon v. United States,* 423 A.2d 200, 210 (D.C.1980), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422 (1981).

Appellant's other contentions are likewise meritless. While strict compliance with D.C. Code § 23–111 (1989) is required, *Fields v. United States,* 396 A.2d 990, 991 (D.C.1979), where a

A.2d 555, 562 (D.C.1988); *see Brooks v. United States,* 536 A.2d 1091, 1095 (D.C. 1988) (in ruling on the probable effect that the new evidence may have upon the result, the trial court can consider matters of credibility).

 Accordingly, the case is remanded to the trial court with respect to Hopkins' Fifth Amendment claim.[11]

defendant has notice before trial of the government's intent to seek enhanced punishment, a technical error may be harmless. *Arnold v. United States,* 443 A.2d 1318, 1327 (D.C.1982). Here, whether the enhancement information was based upon felony murder and housebreaking or simply housebreaking, made no difference in terms of the possible enhanced sentence for appellant; he received adequate notice, and we find no prejudice. *See Shepard v. United States,* 538 A.2d 1115, 1119 (D.C.1988).

Nor did the trial judge err in denying appellant's motion to vacate his sentence for possession of an unregistered firearm and unregistered ammunition on the basis that they merged with his conviction for carrying a pistol. Each offense requires proof of an additional fact which the other offense does not. *See Alston v. United States,* 383 A.2d 307, 312 (D.C.1978); *Copening v. United States,* 353 A.2d 305, 310 (D.C. 1976); *see also Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The registration offenses "concerns the firearm in question" while the licensing offense "relates to the personal qualifications of a particular individual to carry a pistol in the District." *United States v. Wilder,* 150 U.S.App.D.C. 172, 175, 463 F.2d 1263, 1266 (1972).