**Alfred M. BROWN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 88–173.

District of Columbia Court of Appeals.

Argued March 18, 1991.

Decided April 23, 1991.

---

Boniface K. Cobbina, Washington, D.C., appointed by this court, for appellant.

Teresa A. Howie, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Thomas C. Black and Kathleen A. Brandon, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, and SCHWELB, Associate Judge, and GALLAGHER, Senior Judge.

ROGERS, Chief Judge.

Appellant Alfred M. Brown appeals his convictions [1] on the principal ground that the trial judge erred in permitting a potential defense witness to assert a blanket Fifth Amendment privilege against self-incrimination before determining the likelihood of further prosecution for a dismissed charge. In view of the prosecutor's representations to the judge, we affirm.

## I

On October 5, 1986, at approximately 8:30 a.m., upon hearing a noise outside his apartment window, Dale Alward observed a man, later identified as appellant, in a grey sweat shirt loading a gun. Alward called the police department emergency number (911) to report what he had seen. Alward then saw appellant cross the street, without the gun in his hand (but with a sag in his sweat shirt), and join a man dressed in a brown jogging suit, later identified as Lucho Innis. The two men began talking to two women. After a short time, the four people recrossed the street and entered an alley.

Alward got dressed and went to see where they were going, and a police car pulled up. As Alward was explaining to the police officers what he had seen, a woman ran out of the alleyway screaming that she was being robbed, her friend was being robbed, and there was a man with a

gun in the alley. The officers drove into the alley and saw a man in a brown jogging suit walk out; they did not stop him since they were looking for a man in a grey sweat shirt. The officers then saw appellant with a woman; when appellant saw the officers he started to run, ducking into a driveway and throwing something on the ground. The officers pursued him and eventually apprehended him. The officers also found a gun in the driveway. Innis was arrested after the two women told the police that he was also involved.[2]

Appellant and Innis were originally charged with armed robbery. These charges were dismissed on December 4, 1986, apparently during the grand jury phase of the case where a determination was made to reduce the case to misdemeanor charges. At trial appellant sought to call Innis as a witness. The trial judge appointed counsel for Innis, and counsel advised the judge, after speaking with the prosecutor and appellant's counsel, that Innis would assert a Fifth Amendment privilege because he would have to admit that he was present at the scene with appellant when the alleged robbery took place and that they were engaged in a criminal enterprise. Hence, according to counsel, Innis' admission would make it attractive for the government to reinitiate armed robbery charges. Upon questioning by the trial judge, Innis' counsel partially revised his view, agreeing on the one hand that Innis was unlikely to incriminate himself in a robbery or firearms charge, and that there was only a remote possibility that he would be charged with robbery, gun possession, or solicitation, but maintaining on the other hand that the government was reserving the right to charge Innis with robbery if "something c[ame] out of the case."

Appellant's trial counsel conceded that Innis would tend to incriminate himself by placing himself at the scene. The issue,

1. Appellant was convicted by a jury of carrying a pistol without a license, D.C.Code § 22–3204(a) (1990), possession of an unregistered firearm, *id.* § 6–2311(a) (1989), and unauthorized possession of ammunition, *id.* § 6–2361(3).

2. Officer Gonzalez described the women as dressed like prostitutes, and Officer Winters' report stated that the women claimed to have met the two men and had agreed to have sex with them for money.

according to counsel, was whether the government was likely to prosecute Innis for armed robbery. Counsel maintained that the government was in a position to make representations about its intention to prosecute since it was well aware of all the facts and in a position to know the reason the armed robbery charges were dropped. The prosecutor responded that the government was not prepared to grant immunity to Innis, and that her supervisor had said she could not make a representation about what the government might or might not do with regard to charging Innis. The prosecutor advised the judge that she did not know why the robbery charges were dropped but could attempt to get that information that afternoon. The prosecutor further stated that she did not think that the government "necessarily has to decide at this time whether [it] would give immunity or bring charges in the future. That seems to me something that we are not responsible for answering right now. And rather the determination lies with the witness whether he is willing to chance that by—when he takes the stand[ ]."

The trial judge ruled that Innis could properly invoke a blanket Fifth Amendment privilege. Given the witness' location, proximity to appellant, and the statements by witnesses that he was one of the persons who was involved, the judge viewed Innis as "a candidate for a robbery charge." The judge noted that only the government knew if it would ever bring robbery charges against Innis, and that for all he knew the two women were "in Switzerland" with no likelihood of returning. The judge nonetheless concluded, since the dismissal was without prejudice, that Innis faced a reasonable risk of prosecution on the armed robbery charge and could invoke the privilege on that ground.[3]

I

Appellant contends that the trial judge erred in permitting Innis to assert a blanket Fifth Amendment privilege against self-incrimination without conducting a question-by-question inquiry into the sufficiency of Innis' claim and seeking an accommodation between Innis' claim and appellant's Sixth Amendment right to compulsory process for obtaining witnesses. He challenges the adequacy of the trial judge's assessments of (1) whether Innis' testimony would be incriminatory of armed robbery, since the judge did not inquire of appellant's defense counsel what testimony he would seek to elicit from the witness, and (2) Innis' risk of prosecution on an armed robbery charge, since the judge had no information about why the armed robbery charges had been dismissed.

■ The analysis that applies when assessing a witness' Fifth Amendment privilege against a defendant's Sixth Amendment right to compulsory process for obtaining witnesses is well settled. The trial judge must engage in a two-prong analysis in order to examine whether the witness has reasonable cause to apprehend danger from a direct answer: the judge must assess whether the witness' testimony would be incriminatory, and whether the risk of prosecution is real and substantial, and not imaginary. *See Jaggers v. United States,* 482 A.2d 786, 793 (D.C.1984); *Davis v. United States,* 482 A.2d 783, 785 (D.C. 1984). The trial judge ordinarily must conduct a question-by-question inquiry of the witness outside the presence of the jury, ruling on the privilege as to each question. *Davis, supra,* 482 A.2d at 785. Where anything less than a blanket privilege appears insufficient to protect the witness, the question-by-question inquiry need not be conducted. *See Holbert v. United States,* 513 A.2d 825, 829 (D.C.1986).

■ Appellant waived any right to challenge the trial judge's assessment under the first prong, and cannot now complain that the judge failed to inquire of appellant's trial counsel precisely what questions he would have asked Innis. Although Innis' counsel stated that his client's testimony would merely place him with appellant

---

**3.** The judge excluded from the scope of the privilege any statements Innis made about sexu-al solicitation or "something of that nature."

at the scene, appellant's counsel conceded at trial that Innis would incriminate himself in the robbery if he placed himself at the scene. Appellant's trial counsel did not suggest that his questioning of Innis would not place him at the scene nor indicate that he objected to the manner in which the trial judge was proceeding. Furthermore, Innis' counsel advised the judge, and the prosecutor confirmed, that the government was reserving its right to prosecute Innis as a result of what he said at trial. Under these circumstances, any inquiry into the nature of the witness' likely testimony would have been superfluous. *See Irby v. United States*, 585 A.2d 759, 763 (D.C. 1991) (admission that witness was at scene of crime loading stolen space heaters into car would implicate witness in crime of receiving stolen property); *Deneal v. United States*, 551 A.2d 1312, 1314 (D.C.1988) (upholding invocation of Fifth Amendment privilege without conducting question-by-question inquiry where defense counsel failed to object to "any facet of the proceeding"); *Holbert, supra*, 513 A.2d at 829; *Vaughn v. United States*, 364 A.2d 1187, 1189–90 (D.C.1976) (waiver of complaint about lack of trial court inquiry where defense counsel failed to challenge witness' assertion of privilege).

On appeal, therefore, the issue is whether the trial judge erred in assessing the risk of prosecution of Innis for armed robbery. Appellant contends that the trial judge had insufficient information about the dismissal of the robbery charges to assess adequately the hazards Innis might face if forced to testify. The court has made clear that the trial judge must determine whether the risk of prosecution "is substantial and real and not merely fanciful." *Jaggers, supra*, 482 A.2d at 793 (citations omitted). To make this assessment the trial judge must inquire "whether the appropriate prosecuting authority intends to bring charges against the witness, or seek an agreement by the prosecutor not to bring charges." *Irby, supra*, 585 A.2d at 763 (citing *Davis, supra*, 482 A.2d at 785) (footnote omitted); *see Wilson v. United States*, 558 A.2d 1135, 1141 (D.C.1989); *see also Jaggers, supra*, 482 A.2d at 797 (New-

man, J., concurring opinion). In the absence of a commitment by the prosecutor not to bring charges, the judge "must make an independent assessment, based on all of the circumstances, of the likelihood of prosecution." *Irby, supra*, 585 A.2d at 763–64. Where no promise of immunity is made, the trial judge has the burden to "undertake a searching inquiry," while construing the Fifth Amendment liberally and confining its protection to instances in which the witness "has reasonable cause to apprehend danger from a direct answer." *Wilson, supra*, 558 A.2d at 1141 (citations omitted).

■ Appellant's contention that the trial judge's inquiry about the risk of prosecution was inadequate is unpersuasive. Before the trial judge, appellant's counsel argued that the prosecutor was in a position to advise the court whether the government intended to prosecute Innis for robbery. When the prosecutor advised that she was unauthorized to make a representation one way or the other, the judge returned to the question of why the government had dropped the charges. The prosecutor offered to make an effort that afternoon to obtain the information. However, the judge did not wait until the afternoon and instead proceeded to rule that there was a substantial risk that Innis might be prosecuted.

In proceeding to rule before determining whether the prosecutor would provide information about the reason for the dismissal of the armed robbery charges, the judge appears to have acted without the benefit of significant information which could potentially have been available to him later in the day. *Cf. Wilson, supra*, 558 A.2d at 1143 n. 12 ("[i]t may sometimes be in the interest of justice for the trial judge to defer ruling on ... [the Fifth Amendment privilege] until a stage of the trial at which all potentially relevant information has been received"). As the judge acknowledged, he did not know what the government might do with regard to charging Innis, much less whether the two women were available to testify as government witnesses. Had the judge deferred ruling

until that afternoon it is conceivable that the prosecutor might have advised that the two women were unavailable to testify, which would have aided the judge in assessing Innis' real risk of prosecution. Indeed, the prosecutor might have advised that since the women were unavailable, the government would informally agree that it would not prosecute Innis for armed robbery. The likelihood of such an agreement would have increased if the judge had pressed the government on its intentions with regard to Innis. *See id.* at 1140 (there is "often a tendency on the part of the executive branch to exercise its discretion to grant or deny immunity in ways that make it more likely that defendants will be convicted, [and] [i]n such a situation, this court has suggested that the trial judge seek a commitment from the appropriate prosecuting authority not to bring charges against the witness." (citing *United States v. Herman,* 589 F.2d 1191, 1203 (3d Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979), and *Davis, supra,* 482 A.2d at 785)). While the government remains free to decide whom it will or will not prosecute, the timing of its decision may adversely affect a defendant's Sixth Amendment rights, and that factor should be considered by the trial judge in determining whether to seek a further commitment from the government about its intentions. *See also Deneal, supra,* 551 A.2d at 1318 (Newman, J., concurring) (government cannot keep information from the court).

On the other hand, it was clear to the trial judge when he ruled that the government was reserving its right to prosecute Innis for armed robbery on the basis of what he might say at trial. Indeed, the trial judge undoubtedly may have appreciated the problem faced by the government if it based an armed robbery prosecution on the testimony of the two women. *See* note 2, *supra.* In addition, appellant's trial counsel never suggested to the trial judge that he postpone his decision until the prosecutor reported that afternoon on her ef-

forts to find out why the robbery charges had been dropped. Thus, the instant case differs from those in which the court has reversed and remanded for further proceedings where the trial judge has failed to make an inquiry requested by defense counsel, as in *Jaggers, supra,* 482 A.2d at 786, or failed to make any inquiry at all, as in *Davis, supra,* 482 A.2d at 785.

The record reveals that the trial judge made an independent assessment of the likelihood of prosecution in the absence of the commitment by the government not to prosecute Innis for robbery after inquiring of all counsel of the likelihood that Innis would incriminate himself. The prosecutor advised the judge that she had checked with her supervisor and could not make a commitment on whether Innis would be prosecuted in the future, and further, that the government intended to wait to see what Innis said if he testified. Trial counsel did not object to the trial judge's ruling on Innis' invocation of the Fifth Amendment privilege at the time the judge ruled, and counsel made no objection thereafter when the trial judge asked if counsel had anything further. A fair reading of the transcript, therefore, is that the trial judge had fully responded to defense counsel's concerns and counsel did not suggest any basis on which the judge should make a further inquiry, much less await receipt of information about why the robbery charges were dropped by the prosecutor that afternoon. *See Wilson, supra,* 558 A.2d at 1142 ("timing is everything"); *Deneal, supra,* 551 A.2d at 1314–15. Under these circumstances, we conclude that appellant's contention that the trial judge's inquiry into the risk of prosecution was insufficient must fail.

Accordingly, we affirm.[4]

---

**4.** Appellant's contention that the trial judge abused his discretion in denying a mistrial as a result of a misstatement by the prosecutor referring to his prior convictions as felonies, is mer-

---

itless. *See Lee v. United States,* 562 A.2d 1202, 1204 (D.C.1989). Appellant claims that the single reference, quickly corrected, "raise[d] the spectre [sic] of a person so vile and contemptible such that his credibility [ ] approach[ed] zero." The trial judge offered to give a curative instruction, but defense counsel neglected to remind the judge to give it, thus suggesting that he did not view the misstatement to be so damaging. *Cf. Parks v. United States,* 451 A.2d 591, 613 (D.C.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983) (counsel's failure to object to remark in closing argument is some indication that counsel did not view remark as damaging). The impeachment was properly confined to credibility, *Lee, supra,* 562

A.2d at 1204, and the jury was given a limiting instruction.